Deaderick, C. J.,
delivered, the opinion of tbe court:
At tbe special May term, 1875, of tbe chancery court, a decree was rendered confirming tbe master’s report and ordering a sale of tbe partnership property for tbe payment of debts.
From this decree defendant Luke Thomas, one of tbe partners, appealed to this court.
In 1866 Price, Caldwell, A. 0. Etheridge, and Carson were equal partners in business, running a cotton factory and perhaps other machinery, and owning a tract of five or six hundred acres of land, upon which tbe mills were situate. Tbe business was conducted under tbe name, and style of J. W. Caldwell & Co.
*709 In 3869 Oaldwell sold Ms interest in the concern to Randle, lie succeeding to the lights and liabilities of Caldwell.
The firm, before this sale, had made considerable and expensive additions to their machinery, and had purchased some additional real estate.
After this sale the name of the firm was changed to that of G-. H. Price & Co., but in all respects conducted as before, except that Randle was substituted to the rights and liabilities of Caldwell by his purchase, and was accepted and treated by the other partners as a member of the firm.
jSTo invoice of the assets of the firm was taken nor was-the amount of the debts accurately ascertained. The contract was made between Caldwell and Randle and acquiesced in by the other members of the firm. At this time the debts of the firm were supposed to be, and were in fact, about $10,000.
After this Etheridge sold his interest in the firm to John Curtis, who also succeeded to the rights and liabilities of Etheridge, and was accepted as a member of the firm in Ms stead.
Tinder this arrangement these purchasers were simply substituted as partners in the firm, to' the rights and liabilities of their respective vendors; all were equal partners, having equal interests in the assets, and being equally liable for the debts of the firm, conducted now under the name of Geo. H. Price & Co., and carrying on a cotton spinning factory, a cotton gin, a mercantile establishment, and a grist mill.
In 1871 Randle sold out his interest in the partnership property to defendant Thomas. By this contract between the two, Thomas agreed to assume all of Randle’s liabilities as a partner, and was to have all his rights, taking his place as a partner in the firm, and was SO' accepted -and received by the other partners.
When this trade was made Randle and Thomas applied *710 to Price to know the condition of the business. Price stated that he was unable to tell, and referred them to- the bookkeeper.
Without investigation or examination, he stated the debts were, as he thought, about $11,000. The bookkeeper on one occasion, upon being applied to, stated to them that he thought the debts were about what Price estimated them to be, but neither he nor Price made any examination or professed to give the, amount accurately, or otherwise than a conjectural estimate.
Without any further examination, however, Eandle and Thomas consummated their trade, and a year or two' after-wards the debts of the concern, including considerable sums due the partners, are ascertained to be about or more than double what they were supposed to be a year or two before.
Thomas and Eandle charge that Price and the bookkeeper deceived and defrauded them by misrepresentations, but in this very voluminous record there is no evidence to sustain the charge.
It was a matter of no pecuniary interest to either Price or the bookkeeper that Thomas should take the place of Eandle, nor does it appear that either had any solicitude or wish that the sale should be made. Eandle was a partner, and could have had a more careful examination of the state of the business made, and Thomas, about to become a purchaser, might with proper precaution have ascertained more accurately the value of the interest he was about to buy.
In September, 1873, Thomas conveyed his interest in the firm in trust to secure certain debts he owed, the hill in this case having been filed in June, 1873, by two of the three other partners, and the representatives of the other against Thomas and the trustee and beneficiaries in his deed of trust, praying for a settlement of the partnership *711 and sale of the partnership property for the payment of the debts of the firm.
The chancellor ordered an acconnt of the assets and liabilities of the firm, and npon the report of the master, exceptions were filed and disallowed, except as to compensation to Price after Thomas became a partner. .
These exceptions and the pleadings raise several questions. It is insisted that Thomas, by his purchase, became liable only for his share of the debts incurred while the business was conducted in.the name of Geo>. H. Price & Co., and not for any part of the debt of the firm of Cald-yvell & Co.
We think it very clear that Eandle assumed his share of the debts due from the firm at the time he purchased from Caldwell, and that there was then no other change in the rights and liabilities of the parties than that produced by the substitution of one member in the place of another, and the change of the firm name, made proper by the fact that Caldwell was retiring.
So that Eandle was clearly liable for the debts of Caldwell & Co., as was every other member when they assumed the style of Price & Co.
This liability continued as a liability, of the firm of Geo. Ii. Price & Co., at the time Thomas bought of Ean-dle, and agreed'to assume his share of the firm debts.
It is also insisted by Thomas and his trustee that the conveyance in trust of his interest in the partnership property entitled said trustee to the property conveyed in preference to the creditors of the firm or the partners, for any sum due them on settlement.
We do not think so. The creditors’ lien through the partners is the superior right. So, also, the partners hold this property as a pledge or security for any balance which may be found to be due to them.
The debts due from the firm we think are satisfactorily *712 ascertained, and tire necessity of tlie sale for their payment is satisfactorily shown.
We are of the opinion that the chancellor’s decree is' in all respects correct, and it will be affirmed. The correction as to the allowance to. Price for sendees after Thomas became a partner, which does not seem to have been, will be made, and the master may lay the la'nd off in lots and sell it first in that way, and afterwards' sell it as a whole, and adopt and report the sale that yields the largest sum.
Thomas and his sureties will pay the costs of this court, and the costs of the chancery court will be paid as adjudged or as may be adjudged by the chancellor. And this cause will be remanded for the execution of the decree of this court and for further necessary or proper proceedings therein.